IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TYLER COCHRAN,　　　　　　　　　　　　　　　Case No. 3:17-cv-00334-SB

　　　　Plaintiff,　　　　　　　　　　　　　　　　　**OPINION AND ORDER**

　　　　v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

　　　　Defendant.

**BECKERMAN, Magistrate Judge.**

　　　　Tyler Cochran ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons that follow, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

# BACKGROUND

Plaintiff was born in June 1985, making him twenty-seven years old on September 24, 2012, the day he filed his protective application.[1] Plaintiff has a General Equivalency Degree ("GED"), and no past relevant work experience. Plaintiff alleges disability due primarily to "social phobias," a "conduct disorder," oppositional defiant disorder, attention deficit hyperactivity disorder ("ADHD"), developmental delays, "[l]earning disabilities in written language and math," an ability "to print but [not] write in cursive," and bipolar disorder. (Tr. 69, 83, 202.)

On June 8, 2011, a little over a year before the amended alleged disability onset date, Plaintiff appeared for a therapy session with Gina Patriarca ("Patriarca"), a qualified mental health professional. Plaintiff reported that "things [were] going well," he "continue[d] to work for his uncle's friend a few times a week" as a landscaper, his symptoms were "stable" and he "liked his medications," he did not have "any issues or problems," and he was "no longer interested in therapy." (Tr. 325-26.) Patriarca agreed that Plaintiff no longer needed individual therapy sessions, and noted that Plaintiff made significant progress during treatment: "[H]e used to lay in bed, in the dark, all day long and play video games. He now works, goes to school, can ride the bus, hangs out with friends, has a girlfriend, and gets along with his family." (Tr. 326.) Patriarca therefore closed the file, noted that treatment was "[s]uccessful," stated that Plaintiff's bipolar disorder and anxiety-related symptoms "were successfully reduced" and he was "actively

---

[1] The relevant period here is September 24, 2012, the date Plaintiff filed his protective application, to March 11, 2015, the date of the ALJ's decision, because SSI is not retroactive. *See Koster v. Comm'r Soc. Sec.*, 643 F. App'x 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is September 24, 2010, the date Koster filed his protective application, to August 15, 2012, the date of the ALJ's decision." (citing 20 C.F.R. § 416.335)); *see also* Tr. 16, 39, 177 (indicating that Plaintiff originally alleged a disability onset date of January 1, 2009, but amended it to September 24, 2012, because "this is a Title XVI case only").

engaged in life," and assigned a Global Assessment of Functioning ("GAF") score of seventy.[2] (Tr. 327.)

On January 10, 2013, Plaintiff was referred to Dr. Daniel Scharf ("Dr. Scharf"), a clinical psychologist, for an intellectual assessment. (Tr. 337-42.) During the examination, Plaintiff "reported his belief that he is capable of working," he reported no medical "difficulties," and reported that he was "capable of doing the duties" of his last job working as a fast food cook, but added that he "quit the job due to disliking the people at work." (Tr. 337-39.) Based on his examination, which consisted of a diagnostic interview, mental status examination, review of records, administration of the Wechsler Adult Intelligence Scale—Fourth Edition ("WAIS-IV"), and brief interview with Plaintiff's mother, Dr. Scharf assigned a GAF of fifty-eight,[3] and found that Plaintiff's "psychological difficulties are relatively well controlled at this time with medication management," Plaintiff "exhibited weaknesses on intellectual testing suggestive of relatively significant learning problems," Plaintiff "was able to understand and remember instructions and sustain concentration and attention," Plaintiff "likely would have difficulties with persistence after 1 to 2 hours," and Plaintiff "was able to engage in appropriate social interaction," but "has had past difficulties with social anxiety and social avoidance." (Tr. 337, 342.)

---

[2] "GAF rates overall psychological functioning on a scale of 0–100 that takes into account psychological, social, and occupational functioning." Zabala v. Astrue, 595 F.3d 402, 405 n.1 (2d Cir. 2010). A GAF score of sixty-one to seventy "indicates [s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. (citation and quotation marks omitted).

[3] A GAF score of fifty-one to sixty "indicates 'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning.'" Covington v. Colvin, 678 F. App'x 660, 667 n.5 (10th Cir. 2017) (citation omitted).

On January 24, 2013, Dr. Edwin Holmes ("Dr. Holmes"), a non-examining state agency psychologist, completed a psychiatric review technique assessment. (Tr. 76.) Dr. Holmes concluded that the limitations imposed by Plaintiff's mental impairments failed to satisfy listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders).

Also on January 24, 2013, Dr. Holmes completed a mental residual functional capacity assessment form, in which he rated Plaintiff's limitations in each of sixteen categories of mental ability. (Tr. 77-79.) Dr. Holmes rated Plaintiff to be "not significantly limited" in eleven categories and "moderately limited" in five categories. (Tr. 78-79.) Dr. Holmes added that Plaintiff is capable of understanding and remembering one- to two-step instructions, capable of carrying out and maintaining the concentration, persistence, and pace necessary to perform one- to two-step tasks, and needs to be limited to no more than occasional interaction with the public and co-workers.

On June 27, 2013, Dr. Dorothy Anderson ("Dr. Anderson"), a non-examining state agency psychologist, completed a psychiatric review technique assessment, agreeing with Dr. Holmes' finding that Plaintiff's mental impairments do not satisfy listings 12.02, 12.04, and 12.06. (Tr. 90.)

Also on June 27, 2013, Dr. Anderson completed a mental residual functional capacity assessment, agreeing with Dr. Holmes' conclusion that Plaintiff is "not significantly limited" in eleven categories of mental ability and "moderately limited" in five categories. (Tr. 92-93.) Dr. Anderson also agreed that Plaintiff needs to be limited to no more than occasional interaction with the public and co-workers, and found that Plaintiff is capable of understanding and remembering simple and routine instructions, capable of carrying out simple and routine tasks,

and "[m]ay be able to" understand and remember "well learned moderately complex tasks." (Tr. 92-93.)

In treatment records dated January 17, 2014, Dr. David Berner ("Dr. Berner") noted that Plaintiff was brought to the emergency department "via police for evaluation of aggressive behavior since last night." (Tr. 491.) Dr. Berner observed that, according to a police report, Plaintiff "self-medicated . . . with marijuana and alcohol" after his "mother was unable to refill one of [his] medications," Plaintiff "br[oke] down doors and destroy[ed] the house," and Plaintiff was "ready to fight with police." (Tr. 491.) Plaintiff reported that he had stopped taking Wellbutrin "because it ma[de] him feel like he is on meth," but he was taking Lamictal. (Tr. 491.) Dr. Berner counseled Plaintiff to "avoid alcohol" and stated that he doubted that Plaintiff's use of Lamictal (but not Wellbutrin) "created a manic/psychotic state given his improvement." (Tr. 493.)

In a treatment record dated March 14, 2014, Jacqueline Beckwith ("Beckwith"), a nurse practitioner, observed that Plaintiff has a history of depression, bipolar disorder, and anxiety, that Plaintiff was "doing reasonably well" on his medications, and that Plaintiff was "currently working part time at a job that requires less public interaction and he [was] happy with that." (Tr. 507.)

On November 26, 2014, Plaintiff met with Egan Danehy ("Danehy"), a licensed professional counselor, to develop a treatment plan. Plaintiff "shared his unease with starting therapy again" and stated that he did not have "positive experiences in the past." (Tr. 379.) Danehy noted that Plaintiff's reported symptoms were not "consistent with bipolar disorder," ruled out diagnoses of bipolar and autism spectrum disorders, stated that Plaintiff "spends long hours playing video games," and diagnosed Plaintiff with an "[a]nxiety disorder [not otherwise

specified], cannabis abuse, and alcohol abuse." (Tr. 371, 380.) Danehy assigned a GAF of forty-eight.[4]

In treatment notes dated January 8, 2015, Danehy noted that Plaintiff reported that he had not "noticed any benefit" from taking his medications over the past five years, stated that Plaintiff "has regular anxiety when he gets around people," noted that Plaintiff has a "history of learning, speech, [and] developmental delays, fine motor delays in writing, academic struggles, social struggles, and [an Individualized Education Plan]," and assigned a GAF of fifty-one.[5] (Tr. 353, 356.)

On February 20, 2015, Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 38-66.) Plaintiff testified that he lives with his mom, grandmother, sister, and girlfriend, he smokes ten cigarettes a day, he occasionally drives his girlfriend's car, he has a GED and attended community college for an unspecified period of time, he is able to read, write, add, and subtract, he receives food stamps, he is currently looking for a job, and he last worked at a fast food restaurant, but was terminated because a co-worker who "was friends with the manager didn't like" him and was "bad-mouthing" him. (Tr. 41-46.) Plaintiff also testified that "[n]othing" would prevent him from performing a job that involved "sit[ting] in a parking booth," "watch[ing] people go by," and "call[ing] 911" if "something bad happen[ed]," he takes medication because he has "pretty bad dreams" and does not want to "smack [his] girlfriend around [during] any of [those] dreams," he does not suffer from physical

---

[4] A GAF score of forty-one to fifty "indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Covington*, 678 F. App'x at 667 n.5 (citation, internal quotation marks, and brackets omitted).

[5] "A GAF score of fifty-one to sixty "indicates 'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning.'" *Covington*, 678 F. App'x at 667 n.5 (citation omitted).

limitations, he has been dating his girlfriend for five or six years, his hobbies include watching television and playing video games for "an hour and a half" or "two hours a day" on average, he has two friends that he occasionally meets up with to play video games or "go shooting," he and his girlfriend enjoy going to the movies, going to the river, hanging out, and talking, he smokes marijuana and occasionally drinks alcohol, and he perspires excessively due to social anxiety. (Tr. 47-60.)

Following the conclusion of Plaintiff's testimony, the ALJ posed a series of hypothetical questions to a Vocational Expert ("VE") who testified at Plaintiff's hearing. First, the ALJ asked the VE to assume that a hypothetical worker of Plaintiff's age, education, and work experience did not suffer from any exertional limitations, but did suffer from mental limitations that "restrict him" to simple, routine tasks (i.e., tasks like those with a Specific Vocational Preparation or "SVP" level of one or two) and only occasional contact with the general public and co-workers. (Tr. 63.) The VE testified that the hypothetical worker could perform the jobs of auto detailer, pressure washer, and grounds caretaker. The VE also testified that the hypothetical worker could perform these jobs, even if he was limited to only "superficial" contact with the public and co-workers. (Tr. 64.) The VE added that a worker could not sustain gainful employment if he was "absent two or more days a month" or was off task twenty percent of the time, and that his testimony was largely consistent with the Dictionary of Occupational Titles ("DOT"), but his testimony regarding absenteeism and being off task was based on his "work experience." (Tr. 64-65.)

In a written decision issued on March 11, 2015, the ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 416.920(a)(4), and determined that Plaintiff was not disabled. *See infra*. The Social Security Administration Appeals Council denied Plaintiff's petition for

review, making the ALJ's decision the Commissioner's final decision. Plaintiff timely appealed to federal court.

## THE FIVE-STEP SEQUENTIAL ANALYSIS

**I.      LEGAL STANDARD**

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the clamant is presently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof at the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## II. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a)(4), to determine if Plaintiff is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 24, 2012, the day he filed his protective application. (Tr. 18.) At step two, the ALJ determined that Plaintiff had the following severe impairments: "mental disorders variously described as bipolar disorder, social anxiety disorder, learning disorder (not otherwise specified), alcohol abuse, and cannabis abuse." (Tr. 18.) At step three, the ALJ found that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 19.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," subject to the following exceptions: (1) Plaintiff "is restricted to simple, routine tasks, SVP 1 or 2 type tasks," and (2) Plaintiff is "limited to occasional public and occasional co-worker contact." (Tr. 21.) At step four, the ALJ found that Plaintiff had no past relevant work experience. (Tr. 29.) At step five, the ALJ relied on the VE's testimony that an individual with Plaintiff's RFC could perform jobs that exist in significant numbers in the national economy, including work as an auto detailer, pressure washer, and grounds caretaker. (Tr. 29.) Accordingly, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, since September 24, 2012[.]" (Tr. 30.)

## ANALYSIS

## I. STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of

evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* If the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the district court may not substitute its judgment for the judgment of the ALJ. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## II. DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by (1) failing to account for the opinion of the non-examining state agency psychologist, Dr. Holmes, and (2) failing to provide legally sufficient reasons for discounting the opinion of Plaintiff's examining psychologist, Dr. Scharf. (Pl.'s Opening Br. at 2, 4.) As explained more fully below, the Court concludes that the ALJ's decision is based on harmful legal error and not supported by substantial evidence in the record. Accordingly, the Court reverses the Commissioner's decision and remands for further proceedings.

### A. Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another

doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

B. **Application of Law to Fact**

1. **Dr. Holmes**

Plaintiff argues that the ALJ erred by failing to account for the opinion of Dr. Holmes, a non-examining state agency psychologist. Plaintiff's argument can be summarized as follows: (1) Dr. Holmes opined that Plaintiff should be limited to one- and two-step tasks due to his difficulties in maintaining concentration, persistence, and pace; (2) the ALJ assigned Dr. Holmes' opinion significant weight and found it "consistent with the weight of the evidence," yet he formulated an RFC that limited Plaintiff to "simple, routine . . . SVP 1 or 2 type tasks," not one- and two-step tasks; (3) based on the RFC and VE's testimony, the ALJ concluded that

Plaintiff is not disabled because he is able to perform three jobs (i.e., auto detailer, pressure washer, and grounds caretaker) that require the ability to perform Level 2 Reasoning on the Department of Labor's General Education Development scale, which is defined as the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; (4) in *Rounds v. Commissioner Social Security Administration*, 807 F.3d 996, 1003 (9th Cir. 2015), the Ninth Circuit held that there is an apparent conflict between an RFC limiting a claimant to one- to two-step tasks and jobs that require the ability to perform Level 2 Reasoning, and thus (5) this case should be remanded because there is an apparent conflict between the jobs that the ALJ found that Plaintiff is able to perform and Dr. Holmes' opinion, to which the ALJ assigned significant weight and found to be consistent with the weight of the evidence. (Pl.'s Opening Br. at 2-3.)

In response, the Commissioner "concedes that the Ninth Circuit has held that a limitation to one-to-two-step tasks is more restrictive than a limitation to simple, routine, and/or repetitive tasks," and that the ALJ "did not explain any reasons for rejecting [Dr. Holmes'] limitation to one-to-two step tasks." (Def.'s Br. at 5.) Citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989), the Commissioner argues that, even if the ALJ erred by "not explicitly rejecting the limitation to one-to-two-step tasks," the Court may reasonably draw the inference that the ALJ implicitly rejected Dr. Holmes' limitation to one- and two-step tasks because, throughout his decision, the ALJ explained why Plaintiff was only capable of performing "simple work." (Def.'s Br. at 5-7.)

The Court is not persuaded by the Commissioner's argument. In *Magallanes*, the claimant argued that the Commissioner erroneously concluded that she was disabled as of September 1985. 881 F.2d at 750-51. In support of her argument, the claimant observed that the

ALJ "accepted" the reports of one of the claimant's treating physicians, Dr. Fox, and found them to be supported by 'objective signs and findings in the medical evidence.'" *Id.* at 754. In evaluating the claimant's argument that the ALJ's treatment of Dr. Fox's opinion was erroneous, the Ninth Circuit noted that "the ALJ did not recite the magic words, "I reject Dr. Fox's opinion about [an earlier alleged] onset date because. . . .'" *Id*. at 755. The Ninth Circuit explained that its "cases do not require such an incantation," and that a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Id.* Relying on those faculties, the Ninth Circuit held that substantial evidence supported the ALJ's decision to reject Dr. Fox's opinion regarding an earlier onset date, because the ALJ provided legally sufficient reasons for discounting another treating physician's opinion that the claimant became disabled before September 1985, and because it was "proper" to read that portion of the ALJ's decision and "draw inferences" relevant to Dr. Fox's opinion. *Id*. at 753-55.

This case is distinguishable from *Magallanes* because the ALJ did not address another doctor's opinion that Plaintiff should be limited to one- and two-step tasks. Cf. *Magallanes*, 881 F.2d at 750-55 ("Magallanes raises several arguments to challenge the ALJ's determination that the onset date of her disability was September 19, 1985. Her primary contention is that the ALJ failed to give sufficient reasons to justify disregarding the medical testimony of two treating physicians, Dr. Pont and Dr. Fox, that she was disabled as of 1983. . . . Our review indicates that the ALJ met the necessary burden for rejecting Dr. Pont's opinion that Magallanes was disabled as of August 1983. . . . It is proper for us to read the paragraph discussing Dr. Pont's [opinion regarding an earlier onset], and draw inferences relevant to Dr. Fox's findings and opinion, [since] those inferences are there to be drawn."). Rather, the ALJ expressly (1) noted that Dr. Holmes opined that Plaintiff should be limited to one- and two-step tasks (a finding that was not

explicitly made by any other medical doctor), and (2) assigned significant weight to Dr. Holmes' opinion because it was "consistent with the weight of the evidence, including the new evidence developed at the hearing level." (Tr. 26.) The ALJ also found that Dr. Holmes' opinion was consistent with an RFC limiting Plaintiff "to simple, routine tasks, consistent with SVP 1 or 2 work" (Tr. 25), which the Commissioner acknowledges is not accurate. (*See* Def.'s Br. at 5, conceding that "the Ninth Circuit has held that a limitation to one-to-two-step tasks is more restrictive than a limitation to simple, routine, and/or repetitive tasks"). Thus, the Court cannot reasonably draw the inference that the ALJ implicitly rejected Dr. Holmes' limitation to one- and two-step tasks, because such an inference is not there to be drawn. (*Compare* Tr. 26, indicating that ALJ assigned "significant weight" to Dr. Anderson's opinion, but explained why he was not adopting a portion of Dr. Anderson's opinion). Accordingly, the ALJ's treatment of Dr. Holmes' opinion amounted to harmful error. See *Herrera Sanchez v. Colvin*, No. 1:15-cv-00510, 2016 WL 6518504, at \*6 (E.D. Cal. Nov. 2, 2016) ("Because all three jobs required reading and writing in English, an inability to do so would have left Plaintiff with no 'other work,' thereby undermining . . . the Commissioner's burden at step five and, in turn, the ALJ's finding of no disability."); *see also Anderson v. Astrue*, No. 6:11-cv-06377-SI, 2013 WL 55919, at \*5 (D. Or. Jan. 3, 2013) ("The Court may only affirm the disability decision on grounds originally offered by the Commissioner; post-hoc reasoning cannot support an otherwise deficient decision.") (citation omitted).

    2.    **Dr. Scharf**

Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for discounting the opinion of his examining psychologist, Dr. Scharf. The Commissioner acknowledges that the ALJ erred in his treatment of Dr. Scharf's opinion, but argues that the ALJ's error was harmless. (*See* Def.'s Br. at 10, declining to "defend" the ALJ's assertion that

"Dr. Scharf appeared to limit his opinion to the day of the examination," and asserting that "the ALJ's error" was harmless). As explained herein, a remand for further proceedings is necessary because the ALJ's treatment of Dr. Holmes' opinion amounted to harmful error, and because the record contains cause for serious doubt as to whether Plaintiff is, in fact, disabled. Accordingly, the Court need not resolve the parties' dispute regarding whether the ALJ's treatment of Dr. Scharf's opinion amounted to harmful error because the ALJ will address any deficiencies on remand. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("Cortes raises numerous other defects involving the ALJ's analysis of medical opinions (and the weight to be afforded them) and the construction of Cortes's RFC. In light of the Court's finding of two remandable errors, the Court need not address these issues, other than to conclude that a remand for [an award of] benefits is not warranted. The Court requires the ALJ to consider the other issues raised in Cortes's briefing and modify her opinion as appropriate.")

    **C.    Remedy**

Plaintiff argues that this matter should be remanded for further proceedings. (Pl.'s Opening Br. at 3, 7.) The Court agrees that a remand for further proceedings is necessary because the record contains cause for serious doubt as to whether Plaintiff is, in fact, disabled. *Compare Burrell v. Colvin*, 775 F.3d 1133, 1141-42 (9th Cir. 2014) (declining to address whether the claimant met the criteria to remand for benefits, because the record contained "cause for serious doubt" as to whether the claimant was, in fact, disabled), *with* Tr. 46-47 (indicating that Plaintiff testified on February 20, 2015, that he was fired from his fast food position based on conflicts with a co-worker, and that "[n]othing" would prevent him from working as a parking booth attendant who "watches people go by" and reporting "[i]f something bad happens"), *and* Tr. 337-39 (indicating that Plaintiff informed Dr. Scharf on January 10, 2013, that he believes "he is capable of working," identified no medical "difficulties," and reported that he was

PAGE 15 – OPINION AND ORDER

"capable of doing the duties" of a fast food worker, but "quit the job due to disliking the people at work").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 28th day of December, 2017.

_____
STACIE F. BECKERMAN
United States Magistrate Judge